UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DJOLIBA NARCISSE,<br>  Petitioner,<br> v.<br>ROBERT W. FOX,<br>  Respondent. | Case No. 15-cv-01615-EMC<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**<br><br>Docket No. 9 |

## I.    INTRODUCTION

Djoliba Narcisse, a prisoner currently incarcerated at the California Medical Facility in Vacaville, filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer and Mr. Narcisse has not filed a traverse. Mr. Narcisse's petition is now before the Court for review on the merits. For the reasons discussed below, the petition for writ of habeas corpus will be denied.

## II.    BACKGROUND

Mr. Narcisse was charged in Contra Costa Superior Court with aggravated mayhem, mayhem, assault with a deadly weapon, and various related enhancements. CT 176-177.

The California Court of Appeal summarized the trial testimony as follows:

> Narcisse stabbed a woman outside a Pinole bar in the early morning hours of November 11, 2011, cutting her from the middle of her forehead, through her left ear, and down to her neck behind her ear. The incision was life threatening. It caused a significant loss of blood, required surgery, and left the victim with a visible scar and hearing problems. At trial, witnesses provided contrasting versions of exactly what happened.
>
> According to the victim, she first encountered Narcisse the previous

summer at the same bar when she was there with her companion. On that occasion, Narcisse followed the victim and her companion out of the bar, asked the victim for her phone number, persisted in soliciting the number even after the victim refused to give it, and prevented the victim and her companion from getting into their car until someone who was with Narcisse persuaded him to give up. The victim stated that she saw Narcisse about two other times at the same bar, these times without incident, before the night of the stabbing.

The victim testified that on the night of the stabbing, Narcisse bumped into her inside the bar "with force, pow" while she was standing still. The victim told him, "That's not how you say excuse me to somebody," and Narcisse responded, "If you want to make it up out of here alive, I suggest you leave now." The victim testified that she was somewhat upset by the encounter but did not take Narcisse seriously. She went outside to calm down, smoked a cigarette, then reentered the bar.

The victim and her companion decided to leave the bar around 1:45 a.m., and they saw Narcisse holding a knife and arguing loudly in the parking lot with another woman. The victim told the woman with Narcisse that she "could do better." Narcisse then said to the victim, "Shut up or I'll kill you, bitch," and around that time, the victim's companion asked Narcisse (in a joking tone, according to the victim) what he planned to do with his knife. The victim and her companion then started to walk away toward the companion's car, when Narcisse stabbed the victim from behind. The victim tried to fight him off but fell to the ground, and Narcisse kneeled over her. The victim's companion screamed at Narcisse to get off the victim, hit him, and said she was going to call the police. Narcisse went toward the victim's companion with his knife, but he then ran away.

*2 Other witnesses provided different accounts of the night's events, and some of their testimony supported a theory that Narcisse may have acted in self-defense. The woman who was with Narcisse outside the bar testified that she did not see him with a knife that night, although she acknowledged that he owned a knife and often carried it with him for use in the outdoors. According to her, the victim and her companion walked by, gave Narcisse a "really, really, nasty, mean look," and the victim looked as if she disliked Narcisse. She stated that the victim and her companion jumped Narcisse from behind after he told her (the woman he was with) that the victim and her companion were "crazy."

Narcisse testified on his own behalf. He denied stabbing the victim, bumping into her in the bar, or saying anything rude or insulting to her. He stated that he had previously owned a knife, but he had lost it and did not have one with him that night. He testified that the victim and her companion walked past him after the bar closed and yelled profanities at him and the woman he was with. He stated that the victim's companion grabbed a flint that was hanging out of his pocket on his keychain, and he responded by clutching her hand. Narcisse testified that the companion left after a brief struggle, but about a minute later he "got hit upside the head a whole bunch of times" from behind with what felt like a hard object. He crouched,

2

> then fell to the ground after his left knee hit the car in front of him.
>
> He testified that he then crawled in between two cars while the victim and her companion "kicked and stomped on" him.[2]
>
>> [Footnote 2:] A police officer testified that when Narcisse was taken into custody three days after the stabbing, he showed no physical signs that he had been in a fight.
>
> Narcisse claimed that he was eventually able to stand up, grabbed the victim by her throat, pushed her against a wall, grabbed her left wrist, and "begged her to stop, stop hitting me." Whereas both the victim and her companion testified that neither one of them was armed, Narcisse testified that the victim's companion had a knife and told him, "I'm gonna cut you, motherfucker." He testified that he let go of the victim and kicked the victim's companion to prevent her from cutting him, and the victim cut the back of his jacket with a box cutter. He stated that he then punched the victim in the face, and she fell into her companion (who still had a blade in her hand) and onto the ground. He took that as his "cue to get out of there" and left the scene, not realizing that the victim was bleeding or severely injured. Narcisse theorized at trial that the victim's companion accidentally cut the victim when she fell onto her, and his trial attorney argued this theory to the jury during closing arguments.
>
> The woman with Narcisse in the parking lot testified that she saw blood on the ground after the fight, but she "never saw any cuts," and she did not know how the bloody wounds were inflicted. The prosecution played for the jury a recording of an interview the police had with this woman shortly after the incident. According to a transcript of the recording, the woman told an officer that "they really did attack him" and that Narcisse "really was defending himself." She also said that Narcisse did "too much defending" and that she had yelled at the top of her lungs at him to "get off of her [the victim]." She also told the officer that "he was attacked by two women. He did defend himself. I mean, there's no doubt that he, in my opinion, went way overboard" but that "he did not instigate this."

*People v. Narcisse*, 2013 WL 5675920, *1-2 (Cal. Ct. App. Oct. 18, 2013).

A.   Procedural History

On September 12, 2012, a jury found Mr. Narcisse guilty of mayhem (Cal. Penal Code § 203) and assault with a deadly weapon (Cal. Penal Code § 245(a)(1)). CT 176-177. The jury also found that Mr. Narcisse personally used a knife, a deadly weapon (Cal. Penal Code § 12022(b)(1)) in both counts, and that he personally inflicted great bodily injury (Cal. Penal Code § 12022.7(a)) in the assault. *Id*. The jury found him not guilty of aggravated mayhem. *Id*. On November 9, 2012, the trial court sentenced him to nine years in state prison. CT 422.

3

Mr. Narcisse appealed. The California Court of Appeal affirmed his conviction. *Narcisse*, 2013 WL 5675920. The California Supreme Court summarily denied the petition. Docket No. 28-3, at 142. Mr. Narcisse then filed his federal habeas petition, which was stayed to allow him to present unexhausted claims in state court. Docket Nos. 1, 5. Mr. Narcisse filed two habeas petitions in the state court, both of which were denied. Docket No. 28-3, at 90-94, 248-255. The stay of his federal petition having been lifted, the Court now turns to the merits of Mr. Narcisse's three cognizable claims. His claims are: (1) the use of the CALCRIM 3472 jury instruction on self-defense violated his right to due process because there was no evidence to support the instruction; (2) the use of the CALCRIM 3471 jury instruction on self-defense violated his right to due process because there was no evidence to support the instruction; and (3) his sentence violated his right to due process and his right to a jury trial because the sentence exceeded the maximum sentence the Legislature intended. Docket No. 25.

### III.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Contra Costa County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV.  STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## V. DISCUSSION

### A. CALCRIM 4372

Mr. Narcisse asserts that his right to due process was violated when the trial judge gave the CALCRIM 4372 jury instruction, because it was not supported by evidence. Amended Petition, Docket No. 9 at 13. The challenged jury instruction was given as follows: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." CT 237.

The state appellate court summarized the proceedings related to the self-defense instructions as follows:

5

> During closing arguments, the prosecutor pointed out that the People had the burden to prove that Narcisse did not act in self-defense, and she explained how the evidence satisfied this burden. She argued that Narcisse was not presenting a "traditional" self-defense theory, and that instead, it was "kind of this creative hybrid somewhere in between third party culpability, somebody else did this, accident kind of element of self-defense mixed in there." Defense counsel argued during his closing remarks that jurors should have a reasonable doubt about Narcisse's guilt because the victim might have been injured in a "friendly fire" type of accident. In her rebuttal, the prosecutor stressed the unlikelihood that events unfolded the way Narcisse had described.
>
> *3 Before any witnesses had testified at trial, the prosecution requested that the jury be instructed with the standard CALCRIM instructions on self-defense. Toward the end of the trial, during a discussion of jury instructions, the prosecutor stated that she did not think that Narcisse was, in fact, claiming self-defense, but acknowledged that the People had the burden to prove he did not act in self-defense. The court stated that because Narcisse had testified that the victim and her companion had attacked him and that he feared for his life, the evidence supported giving self-defense instructions, and defense counsel did not object.
>
> The jury was thereafter instructed with the standard CALCRIM instructions on self-defense. Specifically, they were told the elements of lawful self-defense in a nonhomicide case (No. 3470), the conditions that must be met for a person who engages in mutual combat or who starts a fight to claim a right to self-defense (No. 3471), and the fact that the right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist (No. 3474).

*Narcisse*, 2013 WL 5675920 at *2-3.

The California Court of Appeal rejected Mr. Narcisse's challenge to the use of CALCRIM 3472. The appellate court discussed only the state law issue and silently denied the federal constitutional claim. The California Court of Appeal determined that, as a matter of state law, the instruction should not have been given because there was not substantial evidence to support it, i.e., there was not substantial evidence that Mr. Narcisse provoked a fight. The court rejected the State's argument that the evidence that Mr. Narcisse's conduct earlier in the evening – bumping into the victim and threatening her – was substantial evidence that Narcisse provoked a fight because that was not the prosecution's theory at trial.

> [B]elow, the prosecutor claimed that the stabbing was instigated by taunting in the parking lot by the victim and her companion. The prosecutor admitted that the victim and her companion "verbal[ly]

> abuse[d]" Narcisse, but stressed that "[y]ou can say whatever you want to someone," and that "[y]ou don't get to stab people no matter what they say to you, ever." To the extent the prosecutor mentioned Narcisse bumping into the victim earlier in the bar, it was to establish that the victim had reason to dislike Narcisse and to provide context why she would taunt him as she left the bar—not to establish that Narcisse had started a fight and had no right to defend himself later in the parking lot.

*Id*. at *3.

The appellate court determined that although substantial evidence did not support the instruction, this,

> "does not warrant our finding reversible error because the jury is presumed to disregard an instruction if the jury finds the evidence does not support its application." (*Frandsen*, supra, 196 Cal.App.4th at p. 278 [rejecting challenge to instructing jury with CALCRIM No. 3472].) Here, jurors were specifically instructed, under CALCRIM No. 200, that "[s]ome of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." We have no reason to believe that jurors ignored this direction to disregard inapplicable instructions. (*Frandsen* at p. 278.)

*Id*. at *4.

The appellate court concluded that, "We do not believe that the modern summary of the law set forth in CALCRIM No. 3472 was so broadly worded or confusing that jurors would have been misled in this case, especially because, again, they were expressly told to disregard any instructions that they found did not apply to the facts." *Narcisse*, 2013 WL 5675920 at *4.

The state appellate court did not discuss the federal due process claim. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011); *see also Johnson v. Williams*, 568 U.S. 289, 300-301 (2013) (when a state court rejects a federal claim without expressly addressing it, federal habeas courts must presume the federal claim was adjudicated on the merits and review it deferentially); *accord Ortiz v. Yates*, 704 F.3d 1026, 1034 (9th Cir. 2012). Mr. Narcisse is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from

7

the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

To obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 378 (1990)). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton*, 541 U.S. at 437). Where a potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380. Even if there is a constitutional error in the instructions, habeas relief is not available unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The state appellate court's determination that there was not substantial evidence to support giving CALCRIM 3472 was not an unreasonable determination of the facts. Nor was its rejection of Mr. Narcisse's challenge to CALCRIM 4372 contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court.

The state appellate court's implicit conclusion that Mr. Narcisse's federal constitutional rights were not violated by the trial court giving a jury instruction that was not supported by evidence was not contrary to, or an unreasonable application of, clearly established law from the U.S. Supreme Court.

The Supreme Court has never held explicitly that giving a jury instruction that is not factually supported violates due process. When there is no "clearly established Federal law, as determined by the Supreme Court of United States," the state court's adjudication of the claim

8

cannot be said to be an unreasonable application of such law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006).

The Supreme Court has observed that that although jurors are not generally equipped to determine whether a particular theory submitted to them is contrary to law, however, when they have been left the option of relying upon a factually of inadequate theory, "jurors *are* well equipped to analyze the evidence." *Griffin v. U.S.*, 502 U.S. 46, 59-60 (1991) (holding that, in a federal prosecution, due process does not require that a general guilty verdict on a multiple-object conspiracy be set aside if the evidence is inadequate to support conviction as to one of the objects). The Supreme Court in *Griffin* observed that, "if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction." *Id*. at 60. The California Court of Appeal's decision was consistent with *Griffin*.

The state appellate court could have reasonably concluded that there was no reasonable likelihood that the jury misapplied the challenged instruction in a way that violated the constitution. Mr. Narcisse had conceded that the instruction was a correct statement of the law, albeit a factually inapplicable one. The trial judge instructed the jury that "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." CT 203. The jury is presumed to have followed these instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them"); *Townsend v. Knowles*, 562 F.3d 1200, 1209 (9th Cir. 2009) ("The law presumes that the jury follows the instructions given") (abrogated on other grounds by *Walker v. Martin*, 562 U.S. 307 (2011). Mr. Narcisse provides no reason for this Court to depart from the presumption that the jurors followed their instructions. Following these instructions, the jurors would have determined that CALCRIM

9

1   3472 could be set aside because it did not apply to the facts of the case.

2   In rejecting Mr. Narcisse's challenge to CALCRIM 3472, the state court noted that the prosecution did not argue that Mr. Narcisse started a fight in order to use force. *Cf. Middleton v. McNeil*, 542 U.S. 433, 438 (2004) (per curiam) (state court may reasonably assume that prosecutor's argument clarified ambiguous jury instruction). The theory was not pursued by the prosecution or the defense. Mr. Narcisse did not argue that he stabbed the victim in self-defense. Rather, he argued that the victim fell and was cut by her friend's knife when she fell.

Mr. Narcisse contends that CALCRIM 3472 effectively relieved the prosecution of its obligation to prove beyond a reasonable doubt that he did not act in self-defense. Amended Petition, Docket No. 9 at 14. He asserts that the record was devoid of evidence that he provoked a fight within the meaning of CALCRIM 3472, rather the record shows that it was the victim and her friend who incited the confrontation. *Id*. at 13. However, Mr. Narcisse has not shown that giving CALCRIM 3472 "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. The instruction, whose only vice was that it did not apply to the facts, did not violate due process, at least not as a matter of clearly established federal law.

Looking at the challenged instruction in the context of the overall charge, it was not unreasonable for the state appellate court reject Mr. Narcisse's challenge to CALCRIM 3472. He is not entitled to habeas relief on this claim.

B.  CALCRIM 3471

   1.  Exhaustion

Mr. Narcisse claims that giving the jury instruction CALCRIM 3471 violated his due process rights because this instruction was not supported by evidence. Amended Petition, Docket No. 9 at 24. Respondent asserts that this claim has not been exhausted and that it fails on the merits.

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

10

federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982).

Mr. Narcisse did not raise his challenge to CALCRIM 3471 on appeal. He did raise the claim in his state habeas petition, Docket No. 28-3 at 111, however, the California Court of Appeal denied his first habeas petition without prejudice to filing a new petition with an adequate record, which petitioner did not do. Docket No. 28-3 at 94. In its order denying the petition, the appellate court cited *People v. Duvall*, 9 Cal.4th 464 (1995). The California Supreme Court summarily denied the petition. Docket No. 28-3 at 249.

Under California law, a denial of a habeas petition with a citation to *Duvall* indicates that a petitioner has failed to include copies of reasonably available documentary evidence, a curable defect. It can be cured in a renewed state petition that includes the documentary evidence, and state judicial remedies are not exhausted in such a case. *See Sanchez v. Scribner*, 428 Fed.Appx. 742, 742-43 (9th Cir. 2011); *Howard v. Campbell*, 305 Fed.Appx. 442, 445 (9th Cir. 2008); *see also Gaston v. Palmer*, 417 F.3d 1030, 1038-39 (9th Cir. 2005), amended on other grounds, 447 F.3d 1165 (9th Cir. 2006).

The district court may deny, but not grant, relief on a habeas petition that presents an unexhausted claim. *See* 28 U.S.C. § 2254(b)(2). The district court can deny an unexhausted claim on the merits if "it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Despite Mr. Narcisse's failure to properly exhaust his claim regarding CALCRIM 3471, the Court will nevertheless deny the claim on the merits.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst*, 501 U.S. at 803-04. When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson*, 138. S. Ct. at 1192. The California Supreme Court denied Mr. Narcisse's petition without discussion. This Court thus looks through that unexplained rejection to the last reasoned decision, the California Court of Appeal's decision, which rejected the petition

1   for the procedural defect that Mr. Narcisse had failed to file an adequate record in support of his

2   petition.

3   Because the last reasoned decision did not reach the merits of the claim and instead

4   rejected it for a procedural reason, this court reviews the claim de novo and without any deference

5   under § 2254(d)(1). *See Sherwood v. Sherman*, 734 Fed.Appx. 471, 473 n.1 (9th Cir. 2018).

### 2. The Claim Fails on the Merits

The trial court instructed the jury CALCRIM 3471, as follows:

> A person who engages in mutual combat or who starts a fight has a right to self-defense only if: One, he actually and in good faith tried to stop fighting; and, two, he indicated, by word or by conduct, to his opponent in a way that a reasonable person would understand that he wanted to stop fighting, and that he had stopped fighting; and three, he gave his opponent a chance to stop fighting.
>
> If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. However, if the defendant used only nondeadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting or communicate the desire to stop to the opponent or give the opponent a chance to stop fighting.
>
> A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied, and must occur before the claim to self-defense arose.

CT 236.

The prosecutor in her closing arguments discussed the mutual combat jury instruction. RT 532-33. She noted that Mr. Narcisse yelled back at the victim and her friends, and engaged in a verbal fight with them. *Id*. She stated, " And so a different set of rules apply when you get into a mutual combat situation or when you're the aggressor. So you don't have to be the aggressor, but if someone picks a fight with you and you respond, then you're in a fight. Then you're in mutual combat." RT 532. She then went on to state the mutual combat instruction and gave examples of the evidence to show that although the victim's friend may have been "beating on" Mr. Narcisse's back, that did not give Mr. Narcisse the right to cut the victim's face. RT 533.

As discussed in Section A, to obtain federal habeas relief for an error in the jury instructions, a petitioner must show that the error "so infected the entire trial that the resulting

12

conviction violates due process." *Estelle*, 502 U.S. at 72. A jury instruction violates due process if it fails to give effect to the requirement that "the State must prove every element of the offense." *Middleton*, 541 U.S. at 437. "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* (quoting *Boyde*, 494 U.S. at 378). "Even if there is some 'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation." *Waddington*, 555 U.S. at 190 (quoting *Middleton,* 541 U.S. at 437). Where an ambiguous or potentially defective instruction is at issue, the court must inquire whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S at 72 & n.4; *Boyde*, 494 U.S. at 380.

Mr. Narcisse's challenge to CALCRIM 3471 fails. Mr. Narcisse does not argue that CALCRIM 4371 is an incorrect statement of law, only that it is factually inapplicable. The record, however, shows that the prosecutor specifically discussed the mutual combat instruction, and discussed the evidence that would apply to that instruction. RT 532-33.[1] The instruction, therefore, was supported by evidence. As the Supreme Court noted in *Griffin*, "jurors *are* well equipped to analyze the evidence." 502 U.S. at 59.

Moreover, even if, as Mr. Narcisse claims, there was no evidence to support giving the CALCRIM 3471 jury instruction, the jury would have simply set it aside. As discussed in Section A, the trial judge instructed the jury that "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." CT 203. The jury is presumed to have followed these instructions. *See Francis*, 471 U.S. at 324 n.9; *Townsend*, 562 F.3d at 1209 (abrogated on other grounds by *Walker*, 562 U.S. 307). The jury was instructed that

---

[1] At RT 532-33 the prosecutor summarized the following evidence supporting the mutual combat instruction: Mr. Narcisse "started screaming "fuck you" back, and he engaged in a verbal fight with these women . . . Was Tiffani beating on his back maybe? Probably . . . And based on Erin Houck's statement, she saw the fight. She saw Tanaya beating him like this, and Tanaya said when she was on her feet she's trying to beat him off of her while he's stabbing her."

13

1 not all instructions would apply and that they should only follow those instructions that applied to their factual findings. Following these instructions, if the jurors determined that CALCRIM 3471 did not apply to the facts of the case, they would have set it aside. Mr. Narcisse provides no reason for this Court to depart from the presumption that the jurors followed their instructions.

Mr. Narcisse has not shown that giving CALCRIM 3471 "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Accordingly, although this claim is unexhausted the Court denies habeas relief on the merits.

C. Length of Sentence

Mr. Narcisse claims that his sentence violated his right to due process and right to a jury trial because the sentence "exceeded the maximum sentence that the Legislature intended." Docket No. 9 at 24. Mr. Narcisse contends that the trial judge abused her discretion by imposing an upper term of eight years, rather than the base terms of four years for his mayhem conviction, plus a conduct enhancement for an additional one year term, for a total consecutive term of nine years, which he asserts is beyond that statutory maximum.[2]

This claim is unexhausted because Mr. Narcisse did not fairly present it to California's highest court. He did not raise this claim in his appeal. Although he raised this claim in his first state habeas petition, Docket No. 28-3 at 108, that petition was not decided on the merits. The California Court of Appeal denied the petition with a cite to *Duvall*, 9 Cal.4th at 474, for failure to file an adequate record, Docket No. 28-3 at 94, and the California Supreme Court summarily denied the petition. *Id*. at 249. As explained in Section B. 1. above, a citation to *Duvall* means the claim is unexhausted. Because the last reasoned decision did not reach the merits of the claim and instead rejected it for a procedural reason, this court reviews the claim de novo and without any deference under § 2254(d)(1). *See Sherwood,* 734 Fed.Appx. at 473 n. 1. Because Mr. Narcisse does not raise a colorable federal claim challenging the length of his sentence, the Court may deny

---

[2] The punishment for mayhem is two, four, or eight years in prison. Cal. Penal Code § 204. Mr. Narcisse was sentenced to a total of nine years in prison, comprised of the upper term of eight years for mayhem (Cal. Penal Code §§ 203, 204) plus one year for personal use of a dangerous or deadly weapon (*id*. at § 12022(b)(1)). CT 422. The trial court stayed the sentences on the other offense and enhancements were stayed. *Id*.

14

his claim on the merits. *See Cassett*, 406 F.3d at 623.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury. U.S. Const. amend. VI. This right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment's Due Process Clause. *Duncan v. Louisiana*, 391 U.S. 145, 149-50 (1968). The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. The "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings. *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004). The Court reaffirmed this basic principle when it determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court. *See United States v. Booker*, 543 U.S. 220, 233-38 (2005). The sentencing guidelines were unconstitutional because they required the court to impose an enhanced sentence based on factual determinations not made by the jury beyond a reasonable doubt. *Id*. at 243–245. The Court in *Booker* held that "the mandatory Guidelines regime set the functional equivalent of statutory maximums, but that the remedy for the resulting Sixth Amendment violation was to increase the discretion of the sentencing judge by making the Guidelines advisory." *United States v. Fitch*, 659 F.3d 788, 795 (9th Cir. 2011) (quoting *Booker*, 543 U.S. at 233 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.")).

In *Cunningham v. California*, 549 U.S. 270 (2007), the Court held that California's determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the

15

sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence. *Id*. at 288–89. The sentencing court was directed under the DSL to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense. *Id*. at 277. Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Supreme Court held that the California sentencing law violated the rule set out in *Apprendi*. *Id*. at 288–89, 293. Although the DSL gave judges broad discretion to identify aggravating factors, this discretion did not make the upper term the statutory maximum because the jury verdict alone did not authorize the sentence and judges did not have the discretion to choose the upper term unless it was justified by additional facts.

"California responded to *Cunningham* by passing SB 40, which amended California Penal Code sections 1170 and 1170.3." *Creech v. Frauenheim*, 800 F.3d 1005, 1016 (9th Cir. 2015) (holding that California Supreme Court's determination that post-*Cunningham* scheme was constitutional was neither contrary to nor an unreasonable application of Supreme Court authority). When Mr. Narcisse was sentenced in 2012, California Penal Code § 1170(b) as amended provided that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." *Id*. at 1016 & n.9. Under California's revised statutory scheme, a trial court's imposition of an upper term is within its discretion and not based on a factual finding and therefore does not violate a criminal defendant's rights to a jury trial and due process. *Id*. at 1017. The amended statute directs the sentencing court to "select the term which, in the court's discretion, best serves the interests of justice," and to "state the reasons for its sentencing choice on the record at the time of sentencing." *Id.* at 1016 (quoting Cal. Penal Code §1170 (b)). This sentencing scheme is constitutional, and does not run afoul of the *Aprendi* rule, because it allows the court to exercise broad discretion in imposing a sentence within a statutory range. *Id*. at 1017.

In support of his claim Mr. Narcisse cites, without explanation, *United States v. Rutledge*, 517 U.S. 292 (1996), a case which involved the unconstitutional conviction, and imposition of a concurrent sentence, for two counts where one count was the lesser included of the other.

16

*Rutledge* did not address the *Aprendi* sentencing concerns at issue in Mr. Narcisse's claim. Mr. Narcisse received a consecutive sentence, eight years for mayhem and an additional one year for use of a dangerous or deadly weapon, for a total of nine years. CT 422. The trial court stayed Mr. Narcisse's sentence for assault pursuant to California Penal Code 654. *Id*.

Here, the trial judge in her discretion imposed the upper term for Mr. Narcisse's sentence, as permitted by California Penal Code § 1170(b). This court is bound by the Ninth Circuit's holding in *Creech* that, under California's revised statutory scheme, a trial court's imposition of an upper terms is within its discretion and not based on factual findings and therefore does not violate a criminal defendant's right to a jury trial. *Id*. at 1017. Mr. Narcisse's claim that the length of his sentence violated his right to due process and right to a jury trial necessarily fails because the California statutes under which Mr. Narcisse was sentenced have already been found constitutional under federal law in *Creech*. Accordingly, Mr. Narcisse is not entitled to habeas relief on this claim.

1. No Certificate Of Appealability

A certificate of appealability will not issue because reasonable jurists "would not find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is denied.

### VI. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: November 13, 2019

_____
EDWARD M. CHEN
United States District Judge